JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HERO LOAN LITIGATION | **Case No. ED CV 16-02478-AB (KKx)**<br>Case No. ED CV 16-02491-AB (KKx)<br>Case No. CV 16-08943-AB (KKx)<br><br>**ORDER GRANTING IN PART and DENYING IN PART MOTIONS TO DISMISS, AND REMANDING CASES** |
| This Document Relates to:<br>ALL ACTIONS | |

Before the Court are Motions to Dismiss filed by Defendants Renovate America ("Renovate"), and the three local government defendants Western Riverside Council of Governments, San Bernardino Associated Governments, and the County of Los Angeles ("Governments"). (*See* Dkt. Nos. 50, 54, 57, 60, 62, 65.) Amicus briefs were filed in support of the Defendants. (*See* Dkt. Nos. 68, 81.) Oppositions and Replies were filed as to all motions. The Court heard oral argument on May 1, 2017. The Court **GRANTS IN PART AND DENIES IN PART** the Motions, and **REMANDS** the cases for lack of subject matter jurisdiction.

1.

## I.     BACKGROUND AND FACTUAL ALLEGATIONS

This matter consists of three consolidated cases in which Plaintiffs allege that the Property Assessed Clean Energy ("PACE") programs authorized and financed by the Governments and administered by Renovate America violate the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, ("TILA"), the Home Ownership Equity Protection Act (15 U.S.C. § 1639) ("HOEPA"), and California Business and Professions Code § 17200, *et seq.*, in various ways.  Defendants move to dismiss the claims on numerous bases.  All Defendants argue TILA and HOEPA claims should be dismissed because the PACE assessments in issue are not consumer credit transactions subject to TILA and HOEPA.  As to the § 17200 claims, Renovate America (the only defendant as to these claims) argues that the facts alleged fail to state any claim.

Plaintiffs filed First Amended Complaints in their respective cases before the cases were consolidated.  *See Loya* 16-2478 (Dkt. No. 46), *Ramos* 16-02491 (Dkt No. 48), *Richardson* 16-8943 (Dkt. No. 51).   Most of the claims have the same or a similar factual and legal basis, and the legal issues relevant to the motions are the same. Thus, the factual allegations below and the Court's discussion apply the same way to each FAC, unless expressly noted otherwise.  All citations are to the *Loya* FAC, unless otherwise noted.  The relevant factual allegations are as follows.

California law authorizes legislative bodies such as the local Government defendants to enter into voluntary contractual property assessments to finance the installation of certain improvements that are permanently fixed to real property.  FAC ¶ 13.  This financing is commonly referred to as Property Assessed Clean Energy or "PACE" financing, and the home improvement loan is commonly known as a "PACE Loan."  *Id.* ¶ 14.  A PACE Loan is created by a homeowner signing a voluntary assessment contract with a public entity whereby the public entity collects payments on the PACE Loan through the county tax collector.  *Id.* ¶ 15.  The public entity pays for PACE improvements by issuing bonds and recovers the debt by a contractual assessment recorded as a lien against the property that is collected by the county tax

collector. *Id.* ¶¶ 16, 51-52. The Government defendants have authorized PACE programs in their jurisdictions, and they entered into PACE contracts with Plaintiffs.

Renovate America administers residential PACE programs for the Government defendants under a program called the Home Energy Renovation Opportunity program, commonly known as the "HERO Loan Program." *Id.* ¶¶ 29, 41. Plaintiffs allege that Renovate America creates and implements the HERO Loan Programs for local governments, including marketing, originating and administering HERO Loans. *Id.* ¶¶ 29-30. Renovate America provides all of the services for the HERO Loan programs, including "reviewing and editing all policies for the HERO Loan Program; providing documentation required for registering HERO contractors; accepting, processing and approving borrowers' HERO Loan applications; approving proposed HERO improvements; providing HERO financing disclosures; accepting, processing and approving HERO funding requests; issuing and executing contractual assessment agreements; recording lien documents; issuing payments to contractors; creating all forms needed for the [] HERO Loan Program; designing and building the HERO Loan Program website; pulling all credit, title, valuation and other reports; reviewing the eligibility of borrowers' properties; providing notifications of approval, denial or incomplete status of borrowers' HERO applications; and preparing HERO Loan payoff letters." *Id.* ¶ 43.

Plaintiffs allege that their HERO Loans violate some fifteen subsection of TILA and HOEPA. The court need not spell out each variety of violation alleged. For purposes of the motions, it suffices to note that each and every TILA and HOEPA claim requires the existence of a "consumer credit transaction." Plaintiffs allege TILA and HOEPA claims against the Government defendants; claims for conspiracy and for aiding and abetting the Government defendants' violations of TILA and HOEPA against Renovate America; and a claim for violating TILA mortgage originator rules against the Government defendants and Renovate America.

Plaintiffs bring their § 17200 claims under the "unfair /fraudulent" prong of the

statute, and under the unlawful prong. These claims are asserted against Renovate America only. For the unfair/fraudulent claims, Plaintiffs allege numerous allegedly deceptive practices, including "(i) secretly charging and collecting double interest; (ii) secretly charging and collecting double administrative fees; (iii) secretly failing to credit payments when made; (iv) improperly amortizing HERO Loans; (v) secretly overcharging recording fees; [] (vi) improperly calculating the APRs disclosed to HERO Loan borrowers," *see* FAC ¶ 299, and in the *Richardson* case, for secretly overcharging for a recording fee. *See Richardson* FAC ¶ 217. The claims under the unlawful prong are based on Renovate America's alleged conspiracy and aiding and abetting the Government entities' TILA and HOEPA violations, *see* FAC ¶¶ 240-247, and on Renovate America's alleged violations of California's Covered Loan Law ("CLL"), Cal. Fin. Code § 4970, *et seq.*, which governs consumer loans.

Defendants move to dismiss all of the claims on numerous bases.

## II. LEGAL STANDARD

Fed. R. Civ. Proc. 8 requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Fed. R. Civ. Proc. 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the

factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

### III. DISCUSSION

#### A. Plaintiffs' TILA and HOEPA Claims Are <u>DISMISSED</u> Because PACE Assessments Are Not Consumer Credit Transactions and Therefore Are Not Subject to TILA or HOEPA.

Defendants argue that all of Plaintiff's TILA and HOEPA claims fail because PACE assessments are tax assessments, and TILA and HOEPA do not regulate tax assessments.

Defendants point out, and Plaintiffs concede, that all of the TILA provisions that Plaintiffs invoke apply only to "residential mortgage loans."  *See* FAC ¶¶ 171-78, 182-85, 207, 217, 222-24 (citing 15 U.S.C. §§ 1639c(a), 1639c(c), 1639c(e), 1639b(c), 1639h(f), and 1638(a)).  TILA defines "residential mortgage loan" to mean "any consumer credit transaction that is secured by a mortgage, deed of trust, or other equivalent consensual security interest."  15 U.S.C. § 1602(cc)(5).  Defendants also point out, and Plaintiffs also concede, that Plaintiffs' HOEPA claims rely on 15 U.S.C. § 1639, which only applies to "high-cost mortgages," which in turn are "consumer credit transactions." *See* FAC ¶ 192; 15 U.S.C. § 1602(bb).  Thus, all of Plaintiffs' TILA and HOEPA claims turn on whether their PACE assessments are "residential mortgage loans" or "high-cost mortgages," both of which are a kind of consumer credit transaction.[1]  TILA's terms, definitions, and restrictions all apply to HOEPA, *see* 15 U.S.C. § 1602(a), so unless Plaintiffs' PACE assessments are a kind of "consumer credit" under TILA, they are not regulated by TILA and HOEPA and these claims must be dismissed.

TILA defines "credit" as "the right granted by a creditor to a debtor to defer

---

[1] The Consumer Financial Protection Bureau has confirmed that TILA and HOEPA both only apply to transactions involving "credit." 12 C.F.R. § 1026.1(c).

payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f). "Consumer" is defined as a "natural person" to whom credit is extended. 15 U.S.C. § 1602(i). PACE assessments are obligations imposed on the property, not the homeowner, and they are collected "in the same manner and at the same time as the general taxes of the city or county on real property." Cal. Sts. & High. Code § § 5898.12, 5898.30. Under California law, a tax assessment lien on property does not constitute a personal debt owed by a consumer. *City of Huntington Beach v. Super. Ct.*, 78 Cal.App.3d 33, 340 (1978). PACE assessments are against the property; they are not a debt incurred by the homeowner, the consumer or "natural person" to whom credit is extended. Accordingly, under TILA's applicable definitions, PACE assessments cannot be a credit transaction, and they cannot, therefore, be residential mortgage loans.

Independently dispositive is the official staff interpretation of the Consumer Financial Protection Bureau ("CFPB"), to which Congress has delegated broad authority to determine whether TILA applies to "all or any class of transactions." 15 U.S.C. § 1604(a). The CFPB's official staff interpretations of TILA expressly exclude "tax liens" and "tax assessments" from the definition of consumer "credit." 12 C.F.R. § 1026.2, Supp. I, Cmt. (2)(a)(14)(1.2). Noting that Congress has given the regulatory agency[2] especially broad authority in interpreting TILA, and in light of the "highly technical" nature of TILA, the Supreme Court has held that the CFPB's official staff interpretations are due a high level of deference: "[u]nless *demonstrably irrational*, [] staff opinions construing the Act or Regulation [Z] [are] dispositive . . ." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980) (emphasis added).

Here, the CFPB's interpretation excluding tax assessments from the definition

---

[2] At the time of the *Ford* case, the Federal Reserve Board was tasked with interpreting TILA. The Dodd-Frank Act reassigned the rulemaking and interpretive authority under TILA from the FRB to the CFPB, effective July 21, 2011. 12 U.S.C. § 5512; 75 Fed. Reg. 57,252 (Sept. 20, 2010).

6.

of credit easily passes this test because it is consistent with TILA's statutory definitions. As discussed above, the way tax assessments and PACE assessments function simply do not satisfy the definition of "credit" or "consumer credit": they are not debts of natural persons or even of entities, but instead are assessed by local governments against real property.

Plaintiffs posit an array of contrary arguments based on TILA provisions not relevant here, on legislative history referring to PACE assessments as "loans," and on an "economic substance" test which, they claim, would establish that even if PACE assessments are tax assessments in name, they are credit transactions in substance. But none of these arguments can overcome the dispositive force of the CFPB's interpretation because none of them shows that interpretation to be "demonstrably irrational."

Plaintiffs advance only one argument directly challenging the CFPB interpretation as demonstrably irrational: they argue that PACE assessments are not covered by the CFPB's guidance on tax assessments because PACE assessments are entered into voluntarily, whereas tax assessments are involuntary. *See, e.g.*, *Loya* Opp'n (Dkt. No. 74), 17:21-18:7. But Plaintiffs do not explain how the voluntary-involuntary distinction makes any difference, let alone how it establishes that the staff interpretation is "demonstrably irrational." That homeowners agree to PACE assessments voluntarily does not establish that these assessments are not tax assessments and are instead credit. The California statutes authorizing PACE programs consistently refer to the financing as "assessments" and dictate that these assessments must be "collect[ed]. . . in the same manner and at the same time as the general taxes" in that jurisdiction. Cal. Sts. & High. Code §5898.30. Plaintiffs' argument that PACE assessments cannot be tax assessments because they are voluntary is therefore inconsistent with the PACE statutes. Furthermore, the CFPB has excluded a number of *other* voluntary transactions from the definition of "credit," such as layaway plans, insurance premium plans, borrowing against the accrued cash

7.

value of an insurance or pension account, and certain mortgage assistance plans administered by a government agency. *See* 12 C.F.R. § 1026.2, Supp. I, Cmt. (2)(a)(14)(1.1), (1.3), (1.5), (1.9). Thus, that a transaction is voluntary is evidently not dispositive of whether the transaction is credit. Plaintiffs have not presented a cogent argument otherwise, and their bald disagreement with the CFPB's interpretation does not establish that it is demonstrably irrational.

Because California's PACE assessments are tax assessments, because the CFPB has stated that tax assessments are not credit, and because this CFPB opinion as applied to PACE assessments is not demonstrably irrational, PACE assessments are not "credit" so they are not subject to regulation by TILA or HOEPA. The motions to dismiss as to all of Plaintiffs' claims based on these statutes are therefore **<u>GRANTED</u>** and these will be dismissed. Because no amendment can change this analysis, these claims will be dismissed with prejudice.

### B. Plaintiffs' Remaining Claims are <u>DISMISSED</u> for Lack of Subject Matter Jurisdiction.

Only Plaintiffs' § 17200 claims remain. Defendants removed these actions to federal court solely on the basis of federal question jurisdiction premised on the TILA and HOEPA claims. *See* Notices of Removal (relying on 28 U.S.C. §1331, the federal question statute, triggered by TILA and HOEPA claims, as the basis of subject matter jurisdiction).[3] The §17200 claims were subject to the Court's supplemental jurisdiction because they arguably form part of the same case or controversy as the TILA and HOPEA claims because they, too, challenge the HERO Program. *See* 28 U.S.C. § 1367(a) (supplemental jurisdiction over state law claims that form part of same case or controversy as claim that triggers federal jurisdiction).

However, once the TILA and HOEPA claims are dismissed, the federal question basis for this court's jurisdiction will be eliminated. The Court declines to

---

[3] Diversity jurisdiction is not available because all parties are California citizens.

8.

retain jurisdiction over the § 17200 claims. *See* 28 U.S.C. §1367(c)(3) (court "may decline to exercise supplemental jurisdiction over a claim [if it] has dismissed a claims over which it has original jurisdiction"). These § 17200 claims turn solely on California law and this case is still in the early stages so retaining it would not yield any meaningful efficiency gains. The case is therefore **REMANDED** back to state court.

## IV. CONCLUSION

For the following reasons, the Motions to Dismiss are **GRANTED** as to all of Plaintiffs' claims under TILA and HOEPA. These claims are **DISMISSED WITH PREJUDICE**.

Because the TILA and HOEPA claims are the only claims pled against Western Riverside Council of Governments, San Bernardino Associated Governments, and the County of Los Angeles, these parties are **TERMINATED from their respective cases**.

The motions are otherwise **DENIED WITHOUT PREJUDICE**.

The Court declines to exercise its supplemental jurisdiction over the remaining claims, so the case is **REMANDED** back to state court. **Each of the three member cases of this consolidated action are to be remanded back to the state court from which it was removed.**

Dated: July 17, 2017

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE